J-A30017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TYLER LEWIS SLATE | |
| Appellant | No. 836 MDA 2016 |

Appeal from the Order Entered May 20, 2016
In the Court of Common Pleas of Adams County
Criminal Division at No(s): CP-01-MD-0002107-2015

BEFORE:  BOWES, OLSON and STABILE, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 01, 2017**

Appellant, Tyler Lewis Slate, appeals from the order entered on May 20, 2016 in the Court of Common Pleas of Adams County that denied his petition for *habeas corpus* relief.  After careful review, we dismiss this appeal as moot.

We summarize the relevant facts as follows.  On July 1, 2015, the trial court entered a protection from abuse (PFA) order directing Appellant to refrain, among other things, from contacting a juvenile female identified as A.S.P.  On October 17, 2015, after learning that Appellant sent a text message to A.S.P. and posted a photographic depiction of her on his Facebook account, Trooper Christopher Pasquale of the Pennsylvania State Police (PSP) charged Appellant with indirect criminal contempt for violating the PFA order.  **See** 23 Pa.C.S.A. § 6113(a).  The trial court convicted

Appellant of indirect criminal contempt on November 18, 2015 and sentenced him to serve six months' probation. *See* 23 Pa.C.S.A. § 6114(a) and (b)(1)(i)(B).[1] The conditions of Appellant's probationary sentence forbade the commission of new criminal offenses and directed Appellant to refrain from assaultive behavior. Adams County Standard Rules of Supervision for Probation, 11/18/15.

On March 7, 2016, PSP charged Appellant with harassment - communicating lewd and threatening language, 18 Pa.C.S.A. § 2709(a)(4). Later, on April 13, 2016, authorities added the charge of terroristic threats, 18 Pa.C.S.A. § 2706(a)(1). Based on these charges, the Adams County Department of Probation Services immediately detained Appellant in the county jail.

On April 14, 2016, the Department of Probation Services moved to revoke Appellant's probation based upon his commission of new offenses and his failure to refrain from assaultive conduct. At a *Gagnon I*[2] hearing conducted on May 13, 2016, the master found probable cause that Appellant violated his probation. The master directed the matter to proceed to a

_____

[1] Pursuant to 23 Pa.C.S.A. § 6114(b)(1), the trial court has the option of sentencing a contemnor to up to six months' imprisonment or six months' probation. *See* 23 Pa.C.S.A. § 6114(b)(1)(i)(A) (describing confinement option) and (b)(1)(i)(B) (describing probationary option).

[2] *See Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)(noting that probationer is entitled to two hearings, a pre-revocation hearing and a final revocation hearing, before the final revocation decision can be made).

***Gagnon II*** hearing, which was scheduled for May 31, 2016. In the meantime, Appellant remained incarcerated pursuant to the detainer issued by the Probation Department.

On May 17, 2016, Appellant filed a counseled petition for writ of *habeas corpus* alleging that his six-month probationary sentence was set to expire on May 18, 2016 and that his continued confinement would be unlawful. The trial court denied Appellant's petition on May 18, 2016, observing that Appellant had not been incarcerated since November 18, 2015, that the case was scheduled for a ***Gagnon II*** hearing on May 31, 2016, and that Appellant had incurred two new criminal charges that were listed for plea consideration and arraignment on May 19, 2016. Appellant filed a second *habeas corpus* petition on May 19, 2016 setting forth similar averments as included in his original petition. The trial court denied Appellant's second petition by order dated May 20, 2016. On May 23, 2016, Appellant filed a timely notice of appeal from the order denying his petition for relief on May 20, 2016.[3]

_____

[3] On May 24, 2016, the trial court, pursuant to Pa.R.A.P. 1925(b), directed Appellant to file a concise statement of errors complained of on appeal within 21 days. Appellant timely complied on May 26, 2016, alleging, among other things, that the trial court erred in "illegally" modifying the sentencing order of November 18, 2015, in allowing Appellant to serve a sentence that exceeded the lawful maximum, and in failing to conduct a hearing and develop a record for purposes of appellate review. The trial court issued its Rule 1925(a) opinion on June 10, 2016.

We now summarize procedural developments that occurred after Appellant filed his notice of appeal, as they have relevance to the issues we discuss in our analysis. On May 31, 2016, Appellant's counsel appeared at the scheduled *Gagnon II* hearing and asked the court to continue the proceeding to allow resolution of Appellant's newly-incurred charges. The court granted the motion and continued the revocation hearing.[4]

Ultimately, the court never convened a *Gagnon II* hearing; nor did it pronounce a revocation sentence. We are advised by the parties[5] that, on or around, August 1, 2016, the Probation Department lifted its detainer against Appellant and he was released from jail. Moreover, our own research reveals that Appellant entered a negotiated guilty plea to resolve the charges that gave rise to the revocation proceedings. As part of that plea, it appears from the docket in that matter that the Commonwealth withdrew the charge of terroristic threats and reduced the harassment charge to a

---

[4] Appellant never moved for bail at any revocation proceeding. In addition, apart from an assertion in Appellant's brief that the Probation Department's detainer was the sole basis for his incarceration, *see* Appellant's Brief at 6-7, we cannot otherwise confirm whether Appellant was jailed for his newly-incurred charges despite our review of the submissions of the parties, the certified record in this case, and the online docket for the offenses that triggered these revocation proceedings. We therefore shall assume, for purposes of analysis, that Appellant was never held in custody on his new offenses.

[5] No document in the certified record confirms Appellant's release date from jail or a final resolution of the revocation proceedings before the trial court.

summary offense. Appellant received no further penalty for his harassment conviction.

Appellant identifies two claims in this appeal. *See* Appellant's Brief at 5. First, Appellant alleges that the trial court erred in allowing his detention beyond the terms of his original probationary sentence without issuing an order within the 30-day period allowed for modification under 42 Pa.C.S.A. § 5505. *Id.* Next, Appellant argues that the trial court erred in detaining him beyond the term of his original probationary sentence without a *Gagnon II* revocation hearing.

Before we address the merits of this appeal, we must assure ourselves that we have jurisdiction to consider Appellant's claims. *See Forrester v. Hanson*, 901 A.2d 548, 554 (Pa. Super. 2006) ("This Court may raise the issue of jurisdiction *suo sponte*."). As we stated above, after Appellant filed his notice of appeal, the Probation Department lifted its detainer and Appellant was released from jail. Moreover, Appellant received no further penalty on his newly-incurred charges. In the face of these developments, we conclude that this appeal should be dismissed as moot.

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002) (*en banc*) (internal citations and quotations omitted).

Appellant urges this Court to refrain from dismissing his appeal since the issues he raises involve matters of public importance and the claims he asserts are capable of repetition but likely to evade review.  **See** Appellant's Brief at 17, *citing* **Commonwealth v. Bernhardt**, 519 A.2d 417, 419 (Pa. Super. 1986).  For the reasons that follow, we disagree.

In his first issue, Appellant argues that his detention beyond May 18, 2016 (the date on which Appellant's original probationary sentence was set to conclude) was "illegal and unconstitutional" because the trial court effectively modified his probationary sentence outside the 30-day period established in 42 Pa.C.S.A. § 5505.  **See** Appellant's Brief at 11.  Section 5505 authorizes a court to modify or rescind any order within 30 days of its entry where no appeal has been taken.  42 Pa.C.S.A. § 5505.  Here, however, Appellant was serving a probationary sentence for violating a PFA order when he incurred new charges and violated the terms of his supervision shortly before his sentence concluded.  Appellant's actions therefore triggered revocation proceedings that bear little resemblance to the procedures for modification contemplated in § 5505.  Hence, Appellant's efforts to analogize the modification procedures set forth in § 5505 with the revocation procedures established in 42 Pa.C.S.A. § 9771 are meritless and

we see no reason to deem Appellant's opening claim as a viable one capable of repetition yet apt to avoid review.

A separate theme underlying both issues raised by Appellant is his implication that the trial court's failure to conduct a revocation hearing somehow caused him to serve a sentence that exceeded the lawful statutory maximum set forth in 23 Pa.C.S.A. § 6114(b)(1)(i),[6] relating to maximum sentences for indirect criminal contempt relating to PFA orders. We find that this claim lacks merit, as the custodial term served by Appellant did not exceed the lawful maximum for a revocation sentence. Under 42 Pa.C.S.A. § 9771, a court may revoke an order of probation where a probationer violates a specific condition of his supervision. 42 Pa.C.S.A. § 9771(b). "[T]he sentencing alternatives available to the court [are] the same as were available at the time of initial sentencing[.]" *Id.* Although the statutory provisions relating to time credit require credit for time served in custody, no similar provision applies to time spent serving an order of supervisory probation. *Compare* 42 Pa.C.S.A. § 9760(1) (time credit) with 42 Pa.C.S.A. § 9771(b) (time spent serving order of probation entitled only to "due consideration" at revocation); *Commonwealth v. Crump*, 995 A.2d 1280, 1284 (Pa. Super. 2010) ("[Section 9760(1)] is clear that a person is entitled to credit toward his or her sentence if time is spent in custody. The statute

_____

[6] This provision offers the trial court the option to direct a contemnor to serve either a sentence of incarceration or probation. *See supra* at note 1.

- 7 -

does not address credit in relation to a probationary sentence."), *appeal denied*, 13 A.3d 475 (Pa. 2010). Moreover, a sentence of total confinement upon revocation may be ordered where the court finds that the probationer has been convicted of another crime, that his conduct indicates that it is likely that he will commit another crime if he is not imprisoned, or that a sentence of imprisonment is necessary to vindicate the authority of the court. 42 Pa.C.S.A. § 9771(c).

We acknowledge that the trial court in this case never convened a **Gagnon II** hearing. Nevertheless, if it had done so,[7] it could have found that Appellant committed new offenses and, therefore, he was subject to a sentence of total confinement of up to six months with no reduction for the time spent serving the probationary sentence. **See** 23 Pa.C.S.A. § 6114(b)(1)(i)(A); **see also** 42 Pa.C.S.A. § 9771(b). Because Appellant did not serve six months in custody, his claim that he served a sentence that exceeded the lawful maximum is meritless and again we see no reason to

---

[7] Although the court did not conduct a **Gagnon II** hearing, there is every indication in the record that Appellant's probation would have been revoked because of his new offenses. At the **Gagnon I** hearing, the master found probable cause to believe that Appellant committed new offenses and Appellant eventually pled guilty to a summary offense of harassment. The trial court also demonstrated its strong inclination to revoke Appellant's probation. **See** Trial Court Opinion, 6/10/16, at 4 ("**When Appellant is re-sentenced**, his sentence cannot exceed six months, credit given for any time spent in custody.") (emphasis added).

deem this claim as a viable one capable of repetition but likely to avoid review.

Finally, we confront Appellant's claim that the trial court erred in failing to conduct a **_Gagnon II_** hearing. Here, Appellant argues that if we dismiss this appeal as moot, the situation before us could occur again since it is the policy of Adams County to forego revocation hearings.[8] **_See_** Appellant's Brief at 17. In addition, Appellant argues that he would be left without a remedy. Because of this, Appellant essentially seeks the creation of a "time account" such that the time Appellant spent incarcerated beyond May 18, 2016 "[would] be credited towards any criminal cases for which Appellant is currently on probation in Adams County." Appellant's Brief at 18. Although there is some merit to Appellant's contention that the court erred in failing to convene a revocation hearing and impose a revocation sentence on the record, Appellant's position does not alter our view that this case is moot since we do not believe that this claim constitutes an issue that is capable of repetition but likely to evade review. In addition, the remedy Appellant seeks is contrary to settled Pennsylvania sentencing jurisprudence.

Although the trial court possessed authority to impose the sentence at issue in this case, Appellant is correct that, under 42 Pa.C.S.A. § 9771(c) and (d), the court was required to conduct a hearing and make certain

_____

[8] Appellant offers no support for this claim.

findings before revoking Appellant's probation and imposing a sentence of total confinement. ***See also*** Pa.R.Crim.P. 708(B). Since this did not occur, the court arguably erred. Contrary to Appellant's suggestion, however, our analysis does not end here.

As we explained above, § 9771 delineates a trial court's obligations when considering revocation and allows the imposition of a sentence of total confinement where the court determines that the defendant has committed new offenses, that the defendant is likely to re-offend if not placed in custody, or that confinement is necessary to vindicate the court's authority. 42 Pa.C.S.A. § 9771(c). This Court has repeatedly cited § 9771 as the guiding influence that directs a trial court's decision-making in the context of revocation proceedings. ***See e.g. Crump***, 995 A.2d at 1282-1283 ("When imposing a sentence of total confinement after a probation revocation, the sentencing court is to consider the factors set forth in 42 Pa.C.S.A. § 9771.") (citations omitted). The existence of § 9771, coupled with our prior case law applying that provision, leads us to conclude that the situation before us is not likely to repeat itself in the future, as Appellant suggests.

Indeed, the procedural history in this case supports this view. Here, the trial court convened a revocation hearing on May 31, 2016. Appellant's counsel appeared at the hearing and, before it could go forward, requested a continuance to allow resolution of Appellant's newly-incurred charges. The trial court granted this request but counsel never sought to reconvene the

revocation hearing. In our view, the fact that the trial court convened a revocation hearing substantially undermines Appellant's contention that it is the policy in Adams County to incarcerate probationers without affording them an opportunity to be heard.[9] Indeed, on the record before us, it is at least conceivable that Appellant used his incarceration as leverage in plea negotiations to induce the Commonwealth to reduce the severity of his new harassment charge and to agree, ultimately, to a sentence of no further punishment. Under these circumstances, we are not inclined to agree that the scenario before us is likely to re-occur.

As a final matter, we conclude that Appellant seeks a remedy that we lack the authority to impose. Appellant reasons that, since his detention was illegal, "the time [he] spent incarcerated in the Adams County Prison beyond May 18, 2016 [should] be credited towards **any** criminal cases for which

_____

[9] The trial court prepared its Rule 1925(a) opinion on June 10, 2016, shortly after Appellant appealed from the denial of his *habeas corpus* petition and nearly two months before Appellant's release from jail. In its opinion, the court demonstrated its thorough familiarity with the requirements of § 9771, its full expectation that Appellant would return to court for a final revocation hearing, and its awareness of the maximum penalty that could be imposed if the court revoked Appellant's probation and sentenced him to total confinement. The court stated as follows: "Th[e trial court] has not yet heard the **Gagnon II** hearing and therefore, Appellant has not yet been re-sentenced in revocation proceedings. When Appellant is re-sentenced, his sentence cannot exceed six months, credit given for any time spent in custody." Trial Court Opinion, 6/10/16, at 4.

- 11 -

Appellant is currently on probation in Adams County."[10]  Appellant's Brief at 18 (emphasis added).  Our Supreme Court has held that "there is no constitutional right to pre-sentence confinement credit" and has warned against the creation of "penal checking accounts."  **Martin v. Pennsylvania Bd. Of Probation and Parole**, 840 A.2d 299, 304 and 309 (Pa. 2003).  Thus, "where an offender is incarcerated on both a [] detainer and new criminal charges, all time spent in confinement must be credited to either the new sentence or the original sentence."[11]  **Id.** at 309.  In this case, Appellant has served a lawful revocation sentence, Appellant's revocation proceedings have concluded, and he received no further penalty on his new offenses.  Thus, Appellant's request in the present case for time credit towards unspecified sentences (*i.e.* other than his revocation sentence or the punishment imposed for his newly-incurred charges) equates to the creation of a penal checking account, which is forbidden.  Here, post-appeal developments, including Appellant's release from confinement and the imposition of no further penalty for Appellant's new charges, have led to a situation in which this Court is unable to enter an order that has any legal

_____

[10] As we stated above, Appellant's sentence did not exceed the lawful maximum and thus did not constitute an illegal sentence.

[11] We see no reason to distinguish this case simply because Appellant was incarcerated based solely on a detainer.

force or effect.  In these circumstances, the appeal must be dismissed as moot.

Appeal dismissed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/1/2017